1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11
HYPHY MUSIC INC., a California
corporation,

Case No. 1:23-cv-00700-JLT-HBK

12
Plaintiff,

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS, GRANTING IN
PART AND DENYING IN PART
DEFENDANTS' REQUEST FOR JUDICIAL
NOTICE, DENYING DEFENDANTS'
MOTION FOR PRELIMINARY
INJUNCTION, AND GRANTING IN PART
AND DENYING IN PART
PLAINTIFF/COUNTER-DEFENDANTS'
MOTION TO DISMISS

13
v.

14
FEDERICO CRUZ, an individual d/b/a
CRUZ PROMOTIONS; JOSE LUIS
POSADAS ROMANO, an individual;
LUIS EDUARDO ROA HERNANDEZ, an
individual; JORGE ESPITIA
HERNANDEZ, an individual, ALONSO
ESTRADA, an individual; and VICTOR
CHAGOYA, an individual,

15

16

17

18

(Docs. 21, 22, 55)

19
Defendants,

20
JULIAN TAPIA SENA, an individual
d/b/a DISTRIBUTION DIGITAL MUSIC
WORLD,

21

22
Third-Party Plaintiff,

23
v.

24
HYPHY MUSIC INC., a California
corporation,

25
Counter-Defendant,

26
and

27
SALVADOR OLVERA RIOS, an
individual,

28

1

1
2

Third-Party Defendant.

3

## I.    INTRODUCTION

4

Before the Court is Defendants' Federico Cruz, Jose Luis Posadas Romano, Luis Eduardo

5

Roa Hernandez, Alonso Estrada, and Victor Chagoya (collectively "Defendants'") motion for

6

preliminary injunction, (Doc. 21), Defendants' request for judicial notice and motion to dismiss

7

Plaintiff's claims, (Doc. 22), and Counter-Defendant Hyphy Music Inc. and Third-Party

8

Defendant Salvador Olvera Rios' (collectively "Counter-Defendants'") motion to dismiss, (Doc.

9

55).  For the reasons set forth below, the Court denies Hyphy's motion for preliminary injunction,

10

grants in part and denies in part Defendants' request for judicial notice, denies Defendants'

11

motion to dismiss, and grants in part and denies in part Counter-Defendants' motion to dismiss.

12

## II.    BACKGROUND[1]

13

**A.    Hyphy and Third-Party Defendant Salvador Olvera Rios' Factual Allegations**

14

Hyphy is a record label that produces, distributes, and promotes live music of bands at

15

venues around the United States.  (Doc. 20, ¶ 13.)  One such band is "Grupo Ensamble" ("the

16

Band").  (Doc. 21 at 8.)  The Band was allegedly founded in the early 2000's by Martin Olvera

17

Luna and his son Salvador Olvera Rios.  (*Id.*)  Following Mr. Luna's death, Mr. Rios allegedly

18

became the sole owner of the Band and is the Band's current director.  (*Id.*)  In 2017, the Band

19

went "viral" following the release of a song titled *Tus Jefes No Me Quieren* and Hyphy contacted

20

the Band to develop future sound recordings.  (*Id.* at 8–9.)  On January 23, 2019, Mr. Rios

21

entered into a "360 Exclusive Multi Rights Recording Agreement" with Hyphy on behalf of the

22

Band, where Hyphy would provide branding services, record production, music video production,

23

public relations, and media promotion.  (*Id.* at 9.)  Further, the 360 Agreement gave Hyphy the

24

rights to use and publish, as well as allow others to use and publish, the Band's name, trademarks,

25

and apply for any necessary further trademarks.  (*Id.*)  As early February 10, 2020, Hyphy

26

27

28

---

[1] Central to both Hyphy's First Amended Complaint and Tapia Sena's Third-Party Complaint are disputes regarding the ownership of the Grupo Ensamble band and use of the corresponding United States trademarks.  Because Hyphy and Mr. Tapia provide contradictory factual allegations, the background will proceed in two parts for clarity.  In synthesizing the disparate facts, the Court does not make any conclusions or findings regarding the veracity of the allegations.

1    allegedly used the "GRUPO ENSAMBLE" word mark and design mark in connection with a

2    series of downloadable musical recordings and pre-recorded CDs for the Band.  (Doc. 20, ¶ 14.)

3        In September 2020, the Band's then-agent, Ms. Cindy Hinojosa, applied for registration

4    with the U.S. Patent and Trademark Office for the "GRUPO ENSAMBLE" word mark on an

5    intent-to-use basis for "entertainment in the nature of live visual and audio performances by a

6    musical band." (*Id.*, ¶ 16.)  In February 2021, Ms. Hinojosa assigned the application to band

7    members Mr. Rios, Jose Alberto Olvera Alonso, Leopoldo Hilario Olvera Navarrete, and Israel

8    Salcedo Fragoso. (*Id.*, ¶ 17.)  In July 2021, Hyphy allegedly began using the "GRUPO

9    ENSAMBLE" marks in connection with the Band's live performances. (*Id.*, ¶ 15.)  In November

10   2021, Mr. Alonso, Mr. Navarrete, and Mr. Fragoso assigned their interest in the registration

11   application to Mr. Rios, then Mr. Rios subsequently assigned his interest to Hyphy. (*Id.*,

12   ¶¶ 18–19.)  Hyphy applied for registration of the "GRUPO ENSAMBLE" word mark in February

13   2022 and the digital mark in July 2022. (*Id.*, ¶ 20; Doc. 21 at 10–11.)

14       Hyphy alleges that Federico Cruz is a freelance promoter who booked several shows for

15   the Band that were ultimately cancelled due to the pandemic. (Doc. 20, ¶¶ 24–25.)  Following the

16   lifting of pandemic restrictions, the Band opted to not work with Mr. Cruz any further as Mr.

17   Cruz allegedly retained the deposits for the cancelled shows and refused to refund customers.

18   (*Id.*, ¶ 26.)  In retaliation, Mr. Cruz purportedly created a fake "Grupo Ensamble" band to

19   compete with the Band, offering live performances under the same name with no evident

20   distinction for the public. (*Id.*, ¶ 27.)  To facilitate creation of this new band, Mr. Cruz allegedly

21   took possession of the Band's confidential business records, including U.S. visa applications of

22   the band's members. (*Id.*, ¶ 28.)  Mr. Cruz then used the allegedly unlawfully obtained visa

23   information to sponsor Mexican foreign nationals for the creation of a copy-cat band. (*Id.*, ¶ 29.)

24   This copy-cat band operates in the United States under the Grupo Ensamble name with the use of

25   the GRUPO ENSAMBLE marks. (*Id.*)

26       Defendant Alonso Estrada is a content supervisor at Ticketon.com, which advertises

27   upcoming events, such as live performances by bands. (*Id.*, ¶ 30.)  Defendant Victor Chagoya is

28   a promoter of live musical performances in and around California's central valley. (*Id.*, ¶ 31.)

1  Mr. Estrada and Mr. Chagoya allegedly worked with Mr. Cruz to market the copy-cat band, using

2  the GRUPO ENSAMBLE marks to secure venues for the copy-cat band.  (*Id.*, ¶¶ 32–34.)  Three

3  venues that had previously booked performances with the Band cancelled those scheduled

4  performances, and fifteen venues outrightly rejected booking performances with the Band due to

5  the lower-priced performance option with the copy-cat band.  (*Id.*, ¶ 34.)  Defendants Jose Luis

6  Posada Romano, Luis Eduardo Roa Hernandez, and Jorge Espitia Hernandez purportedly had

7  knowledge that Mr. Cruz was not authorized to use the GRUPO ENSAMBLE marks in

8  connection with the copy-cat band yet continued to provide services and vocals for the benefit of

9  the copy-cat band.  (*Id.*, ¶¶ 39–40.)  On August 6, 2022, Hyphy sent Mr. Cruz a cease-and-desist

10  letter, though Mr. Cruz continues to operate his copy-cat band within the United States today with

11  use of the GRUPO ENSAMBLE marks.  (*Id.*, ¶ 37.)

12  **B.    Defendants and Third-Party Plaintiff Tapia Sena's Factual Allegations**

13      In 2001, Defendant Mr. Romano and his sister Isidora Gloria Posadas Romano allegedly

14  started Grupo Ensamble.  (Doc. 22-1 at 8.)  Since the Band's inception, Ms. Posadas has

15  purportedly retained 100% ownership.  (Doc. 30 at 9.)  Ms. Posadas became romantically

16  involved with Mr. Luna when Mr. Luna joined the Band.  (*Id.* at 11.)  Ms. Posadas stopped

17  performing with the Band and allowed Mr. Luna to guide the Band's musical direction while Ms.

18  Posadas remained the owner.  (*Id.*)  Mr. Luna's son—Mr. Rios—began participating in the Band

19  with permission from both his father and Ms. Posadas.  (Doc. 36, ¶ 11.)  In 2019, Mr. Cruz

20  booked several shows for the Band and submitted U.S. visa applications on behalf of the Band

21  members, including Mr. Rios, Mr. Romano, Mr. L. Hernandez, and Mr. J. Hernandez.  (Doc. 30

22  at 9.)

23      In April 2020, Mr. Luna passed away, and Mr. Rios began claiming ownership of the

24  Band.  (*Id.* at 12.)  Mr. Rios began a competing band of the same name, adding his father's name

25  to the Band's name: "Grupo Ensamble of Martin Olvera."  (Doc. 36, ¶ 13.)  Following the

26  ownership disputes, Ms. Posadas filed applications for the "GRUPO ENSAMBLE" word and

27  design marks with the Mexican Institute of Intellectual Property ("IMPI").  (Doc. 30 at 10–11.)

28  In November and December 2021, the IMPI granted registration of both trademarks, and Ms.

1   Posadas subsequently served Mr. Rios with an official notice to "suspend and/or cease" use of the

2   trademarks.  (*Id.*)  The Mexico trademarks indicate that the date of first use was March 17, 2017,

3   for MX. Registration No. 2,331,156 and March 1, 2006, for MX. Registration No. 2,339,305.

4   (*Id.*)

5   　　　　In October 2020, Ms. Posadas assigned to Mr. Julian Tapia all rights in the Band,

6   including the right to sue on behalf of the Band and rights relating to the distribution of the

7   Band's music, trademarks, designs, and phonograms.  (*Id.* at 12–13.)  Mr. Tapia alleges that in

8   July 2020, Mr. Rios also transferred his ownership in the Band's recording of *Tus Jefes No Me*

9   *Quieren* and any associated trademarks, designs, and phonograms to Mr. Tapia.  (*Id.* at 17.)

10  Defendants and Mr. Tapia allege that Hyphy has improperly claimed ownership and/or rights to

11  the Band's trademarks, and since February 10, 2020, Hyphy has been improperly using the

12  trademarks for sound recordings, downloadable digital music, and pre-recorded CDs.  (Doc. 36,

13  ¶¶ 18–19.)

14  **III.    JUDICIAL NOTICE**

15  　　　　In ruling upon a motion to dismiss, the Court may consider matters which may be

16  judicially noticed pursuant to Federal Rule of Evidence 201.  *See Mir v. Little Co. of Mary*

17  *Hospital*, 844 F.2d 646, 649 (9th Cir. 1988).  Rule 201 permits a court to take judicial notice of an

18  adjudicative fact "not subject to reasonable dispute" because the fact is either "(1) generally

19  known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

20  determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

21  Evid. 201(b).  "Even if a document is not attached to the complaint, it may be incorporated by

22  reference into a complaint if the plaintiff refers extensively to the document or the document

23  forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

24  2003); *see also Kneivel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  "The defendant may offer

25  such a document, and the district court may treat such a document as part of the complaint, and

26  thus may assume that its contents are true for purposes of a motion to dismiss under Rule

27  12(b)(6)."  *Ritchie*, 342 F.3d at 908; *see also Kneivel*, 393 F.3d at 1076 (holding that the court

28  may consider documents not attached to the pleadings where "the plaintiff's claim depends on the

5

1   contents of a document, the defendant attaches the document to its motion to dismiss, and the

2   parties do not dispute the authenticity of the document, even though the plaintiff does not

3   explicitly allege the contents of that document in the complaint"). "The party requesting judicial

4   notice bears the burden of persuading the court that the particular fact is not reasonably subject to

5   dispute and is capable of immediate and accurate determination by resort to a source whose

6   accuracy cannot reasonably be questioned." *Harrison v. Milligan*, No. C 09-4665-SI, 2012 WL

7   1835428, at *1 (N.D. Cal. May 21, 2012).

8        Defendants request this Court take judicial notice of nine exhibits: (1) a copy of the

9   trademark registration for Mexico Registration No. 2,331,156 issued by the IMPI to Ms. Posadas,

10  (Doc. 22-3, Ex. 1); (2) a copy of the trademark registration for Mexico Registration No.

11  2,339,305 issued by the IMPI to Ms. Posadas, (*Id.*, Ex. 2); (3) a copy of the Spotify album page

12  for the album titled, "Tus Jefes No Me Quieren" by Defendants' "Grupo Ensamble" band,

13  uploaded to Spotify on August 24, 2018, (*Id.*, Ex. 3); (4) a copy of the YouTube page for the

14  video titled, "YA NO QUIERO TUS BESOS (estreno) – GRUPO ENSAMBLE," performed by

15  Defendants' "Grupo Ensamble" band, and uploaded to YouTube on May 26, 2019, (*Id.*, Ex. 4);

16  (5) a copy of the YouTube page for the video titled, "EXITAZO 2019 – EN VIVO TUS JEFES

17  NO ME QUIEREN – GRUPO ENSAMBLE – PACHUCA HIDALGO – AGOSTO 2019,"

18  performed by Defendants' "Grupo Ensamble" band, and uploaded to Youtube on August 28,

19  2019, (*Id.*, Ex. 5); (6) a copy of the YouTube page for the video titled, "Voy A Olvidarla Grupo

20  Ensamble 2020 ESTRENO Limpia Audio HQ," performed by Defendants' "Grupo Ensamble"

21  band, and uploaded to YouTube on December 11, 2019, (*Id.*, Ex. 6); (7) a copy of the Form

22  I-797C, Notice of Action from the Department of Homeland Security, U.S. Citizenship and

23  Immigration Services for members of the Grupo Ensamble Band, dated November 4, 2019, (*Id.*,

24  Ex. 7); (8) a copy of the certified translation of Mexico Trademark Registration No. 2,331,156,

25  (*Id.*, Ex. 8); and (9) a copy of the certified translation of Mexico Trademark Registration

26  No. 2,339,305, (*Id.*, Ex. 9). (*Id.* at 2.) Hyphy contends that the Court should deny each request

27  for judicial notice. (Doc. 29 at 8–13.) As such, the requests will be addressed in turn.

28  ///

1  **C.      Mexico Trademarks: Exhibits 1, 2, 8, and 9**

2          Hyphy argues that the Mexican trademark registrations issued by the IMPI are irrelevant

3  because Ms. Posadas is not a party to the current action.  (Doc. 29 at 9.)  Furthermore, Hyphy

4  contends that because the Mexican trademark registrations were not attached to or referenced in

5  Hyphy's FAC, the trademarks are extrinsic evidence that the court may not consider on a motion

6  to dismiss.  (*Id.*)  Central to Defendants' motion to dismiss is the allegation that Ms. Posadas

7  started the Band with her brother Defendant Jose Luis Posadas Romano and that Ms. Posadas

8  remains the 100% owner of the band.  (Doc. 22-1 at 8.)  Because Ms. Posadas allegedly obtained

9  the Mexico trademark registrations on behalf of the band—registrations that contradict Hyphy's

10  FAC allegations—the trademarks are facially relevant to the current action.  Additionally, the

11  mere attachment to the motion to dismiss does not preclude this Court from taking judicial notice

12  of the Mexican trademark registrations.  *See Knievel*, 393 F.3d at 1076 (explaining that

13  documents attached to the motion to dismiss may be considered even if the plaintiff does not

14  explicitly allege the contents of that document in the complaint).

15          Though the trademarks originate from a foreign jurisdiction, this alone does not bar the

16  Court from granting judicial notice.  *See Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992,

17  998–999 (9th Cir. 2010) (finding judicial notice appropriate where the information was publicly

18  available through government entities and neither party disputed the authenticity of the web sites

19  or accuracy of the information found within); *see also Farrelly v. Polarclad, Inc.*, No.

20  11-CV-04268-PSG, 2011 WL 5864080, at *2 (Nov. 22, 2011) (holding that foreign trademarks

21  may be judicially noticed if the information may be verified through a simple search using the

22  World Intellectual Property Organization's ("WIPO's") database).  Notably, Hyphy does not

23  contest the authenticity of the Mexican trademark registrations, but rather the applicability to the

24  current dispute.  (*See* Doc. 29 at 9–10.)  Because the trademarks can be accessed through WIPO's

25  database, the Court grants judicial notice of the Mexico trademark registrations.  *See Farrelly*,

26  2011 WL 5864080, at *2.  However, the Court's judicial notice "extends only to the existence of

27  these documents and not to their substance, which may contain disputed or irrelevant facts."

28  *Givens v. Newsom*, 629 F. Supp. 3d 1020, 1024 (E.D. Cal. 2022).

**D.    Website Copies: Exhibits 3–6**

Hyphy contends that the copies of the websites should not be judicially noticed because the websites do not identify that the songs and videos were uploaded by Defendants' Grupo Ensamble band, but rather, could have been uploaded by Hyphy's Grupo Ensamble band.  (Doc. 29 at 12.)  Defendants allege that the websites are not being offered for their veracity but as evidence that the Grupo Ensamble mark was used in the public realm prior to Hyphy's alleged date of first use.  (Doc. 31 at 14.)  Defendants note that which band uploaded the songs and videos is irrelevant to the Court's judicial notice consideration because the websites are relied upon merely to indicate what was in the public realm prior to Hyphy's alleged date of first use. (*Id.* at 14–15.)  Because the Court may only take judicial notice of websites to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true"—Defendants' exact purpose underlying the request for judicial notice of the websites—the Court grants Defendants' request for judicial notice of the websites found in Exhibits Three through Six.  *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (internal quotation marks and citations omitted).

**E.    Form I-797C: Exhibit 7**

Hyphy argues that the Court should not take judicial notice of Exhibit 7, the notice of action from the Department of Homeland Security, because the copy of the form is not officially published or verifiable and is irrelevant to the current action.  (Doc. 29 at 12–13.)  Defendants contend that the Court may take judicial notice of the form because the form is a government record of an administrative body as the form was completed, signed, and sent by the United States Citizenship and Immigration Services of DHS.  (Doc. 31 at 16.)  Furthermore, Defendants allege that because the band members received a Class P1B visa, a visa intended for "Member[s] of an Internationally Recognized Entertainment Group," Exhibit 7 demonstrates that "the Band had already reached international recognition within the United States" prior to Hyphy's alleged first date of use of the disputed trademark.  (Doc. 22-1 at 7–10.)  Though the Court recognizes that Exhibit 7 may be relevant to the current action, the Court declines to grant judicial notice.

Exhibit 7 is conspicuously identified as a mere "courtesy copy, not the official notice" of

receipt of the visas.  (Doc. 22-3, Ex. 7.)  Defendants fail to identify authority supporting their contention that a courtesy copy of information submitted to USCIS—a copy that expressly indicates that it does not grant any immigration status or benefit and is not a visa—equates to a judicially noticeable record by an administrative body.  Rather, Defendants rely on *Campos v. Fresno Deputy Sheriffs Assoc.*, 441 F. Supp. 3d 945, 950 n.1 (E.D. Cal. 2020) to argue that the Court need only find "strong indications" that the document is a government document to grant judicial notice.  (Doc. 31 at 16.)  However, the court in *Campos* did not proclaim that "strong indications" alone are sufficient.  441 F. Supp. 3d at 950 n.1.  Instead, the *Campos* court held that the "Employee Representative Authorization Card," which demonstrated that union representation was authorized for the county employee, could be judicially noticed because the plaintiffs did not dispute the authenticity of the cards, plaintiffs made arguments in opposition based on the contents of the cards, and lastly that there were strong indications that the cards were government documents.  *Id.*  The *Campos* court held that the plaintiffs had incorporated the card by reference, not merely that the card could be judicially noticed as a government document.  *Id.*  Therefore, Defendants' reliance on *Campos* is too tenuous to support this Court holding that a courtesy copy regarding a Class P1B visa application is a government record such that it may be judicially noticed.  Additionally, Hyphy does not present any arguments in opposition based on the contents of Exhibit 7 to support judicially noticing the notice of action.  Thus, the Court declines to grant judicial notice of Exhibit 7.

## IV.    LEGAL STANDARD

### A.    Motion for Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).  In general, preliminary injunctions are intended to "merely to preserve the relative positions of the parties until a trial on the merits can be held, and to balance the equities at the litigation moves forward."  *Lackey v. Stinnie*, 604 U.S. —, 145 S.Ct. 659, 667 (2025) (citations omitted).  When seeking a preliminary injunction, plaintiffs must establish: (1) they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable harm in the absence of a preliminary injunction," (3) "the balance of

1    equities tips in [their] favor" and (4) "an injunction is in the public interest."  *Winter*, 555 U.S. at

2    20; *see also Starbucks Corp. v. McKinney*, 602 U.S. 339, 339-40 (2024) (reiterating the court

3    must consider the *Winter* test with a request for a preliminary injunction).  The moving party has

4    the burden to "make a showing on all four prongs" of the *Winter* test to obtain a preliminary

5    injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Thus,

6    the moving party has "the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972

7    (1997); *Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2023).

8    **B.    Motion to Dismiss: Rule 12(b)(6)**

9         Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

10   the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R.

11   Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the

12   complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss,

13   "all allegations of material fact are taken as true and construed in the light most favorable to the

14   non-moving party." *In re Facebook, Inc. v. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir.

15   2020).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be

16   accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  In evaluating a Rule 12(b)(6)

17   motion, review is ordinarily limited to the contents of the complaint and material properly

18   submitted within the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.

19   1994).

20        A claim is facially plausible "when the plaintiff pleads factual content that allows the

21   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

22   *Iqbal*, 556 U.S. at 678.  A complaint that offers mere "labels and conclusions" or "a formulaic

23   recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*,

24   572 F.3d 962, 969 (9th Cir. 2009).  "Dismissal is proper only where there is no cognizable legal

25   theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*,

26   250 F.3d at 732.

27        If the court dismisses the complaint, it "should grant leave to amend even if no request to

28   amend the pleading was made, unless it determines that the pleading could not possibly be cured

by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making

this determination, the court should consider factors such as "the presence or absence of undue

delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

undue prejudice to the opposing party and futility of the proposed amendment."  *Moore v.*

*Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## V.    DISCUSSION

**A.    Defendants' Motion to Dismiss**

Hyphy alleges six causes of action against Defendants: (1) Lanham Act false designation

of origin against Mr. Cruz, Mr. Estrada, and Mr. Chagoya; (2) Lanham Act trademark

infringement against Mr. Romano, Mr. L. Hernandez, and Mr. J. Hernandez; (3) Lanham Act

false advertising against Mr. Cruz, Mr. Estrada, and Mr. Chagoya; (4) common law right of

publicity against all defendants; (5) unfair competition under California Business & Professions

Code § 17200 against all Defendants; and (6) false advertising under California Business Code

§ 17500 against Mr. Cruz, Mr. Estrada, and Mr. Chagoya.  (Doc. 20.)  Defendants move to

dismiss each cause of action on Rule 12(b)(6) grounds.  (Doc. 22-1.)  As such, each claim will be

addressed in turn.

1.    <u>Counts One, Two, & Five: False Designation of Origin, Trademark Infringement, &</u>
       <u>Unfair Competition</u>

Hyphy alleges that Mr. Cruz, Mr. Estrada, and Mr. Chagoya engaged in the unauthorized

use of Hyphy's Grupo Ensamble marks "to deceive consumers as to the origin, source,

sponsorship, or affiliation of Defendants' live performances," which likey caused "consumers to

believe, contrary to the fact, that Defendants' live performances are sold, authorized, endorsed, or

sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff."

(Doc. 20, ¶ 43.)  Hyphy avers that this unauthorized trademark use "constitutes trademark

infringement, false designation of origin and a misleading description and representation of fact."

(*Id.*, ¶ 44.)  Further, Hyphy alleges that Mr. Romano, Mr. L. Hernandez, and Mr. J. Hernandez

"knew that Mr. Cruz had formed a fake band in direct competition to Hyphy's legitimate Grupo

Ensamble Band and knew or had reason to know that at least Mr. Cruz was infringing Hyphy's

11

GRUPO ENSAMBLE Marks by use of the GRUPO ENSAMBLE name with the fake band." (*Id.*, ¶ 49.) Thus, each Defendant engaged in unfair and fraudulent business practices. (*Id.*, ¶ 67.) Defendants argue that the Hyphy has no ownership interest in the marks because Defendants have used the alleged marks in commerce before Hyphy's use, but that if the Court were to consider the territoriality of the marks, the famous-mark exception demonstrates that Defendants' marks have priority. (Doc. 22-1 at 13–19.)

To state a claim for federal trademark infringement under the Lanham Act, a plaintiff must show: "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). "A claim for false designation of origin is subject to the same standard, except a claim for false designation of origin does not require that the mark be registered." *Celebrity Chefs Tour, LLC v. Macy's Inc.*, 16 F. Supp. 3d 1141, 1152 (S.D. Cal. 2014). Similarly, "state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act" and can be analyzed under the same standard. *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994); *see also Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-cv-04895-WHO, 2017 WL 2775030, at *3 (N.D. Cal. June 27, 2017) ("The Ninth Circuit has held that a common law unfair competition claim for trademark exploitation is analogous to a Lanham Act claim and may be analyzed under the same standard."). Accordingly, the Court will address the sufficiency of all three claims jointly. Furthermore, because Defendants do not contest the second element regarding likelihood of confusion, the Court's analysis focuses solely on the protectible ownership interest in the mark. (*See* Doc. 22-1 at 13.)

The plaintiff bears the ultimate burden of showing that the trademark is valid and protectable. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927–28 (9th Cir. 2005). However, at the pleading stage, to state a claim for trademark infringement, false designation of origin, and unfair competition, the plaintiff must merely "plausibly allege" that they own a valid trademark. *Intel Corp. v. Americas News Intel Pub., LLC*, No. C 09-05085-

1   CRB, 2010 WL 2740063, *2, *5 (N.D. Cal. July 12, 2010).  An ownership interest in a mark is

2   demonstrated through priority of use.  *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219

3   (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of

4   use.").  Use of a mark "typically occurs when a mark is used in conjunction with the actual sale of

5   goods or services" and "creates an association among consumers between the mark and the

6   mark's owner."  *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th

7   Cir. 1999).  "The first to use a mark is deemed the 'senior' user and has the right to enjoin

8   'junior' users from using confusingly similar marks in the same industry and market or within the

9   senior user's natural zone of expansion."  *Id.* at 1047.

10        In addition to demonstrating priority-of-use through actual use of the mark in commerce, a

11  plaintiff bringing a claim under the Lanham Act may also establish priority through constructive

12  use of a mark.  *See* 15 U.S.C. § 1057(c).  Specifically, "[t]he plaintiff's federal registration of a

13  trademark is prima facie evidence that the plaintiff owns a valid trademark," and once a mark is

14  registered, the registrant is granted constructive use of the mark dating back to the filing date of

15  an intent-to-use application, *2Die4Kourt v. Hillair Cap. Mgmt., LLC*, No. SACV 16-01304 JVS,

16  2016 WL 4487895, at *5 (C.D. Cal. Aug. 23, 2016), *aff'd*, 692 F.App'x 366 (9th Cir. 2017); *see*

17  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1111 n.3 (9th Cir. 2010) (describing

18  how a registrant receives a constructive-use date after a registrant's intent-to-use application

19  becomes a registered mark).

20        Defendants contend that they first used the marks for distribution and performance of

21  music as early as August 2018, as evidenced through the distribution of music on Spotify and

22  YouTube.  (Doc. 22-1 at 13–14.)  Accordingly, for Hyphy to establish priority of use, and thus

23  establish an ownership interest in the mark, Hyphy must plausibly allege facts to establish that

24  Hyphy used the Grupo Ensamble marks in United States commerce prior to Defendants.  *See*

25  *Brookfield Commc'ns*, 174 F.3d at 1051.  Hyphy alleges in its cease-and-desist letter to

26  Defendants that the marks were used at least as early as 2018, (Doc. 20-1 at 79), and that at least

27  as early as February 10, 2020 the marks were used in connection with digital downloadable music

28  and pre-recorded CDs, (Doc. 20, ¶ 14.)  Furthermore, Hyphy's United States trademarks provide

1    a constructive use date of February 2020. *See 2Die4Kourt*, 2016 WL 4487895, at *5. (Doc. 20-1,

2    Exs. 1, 2.)

3          Generally, the Court would analyze the use of the marks by each party to determine which

4    party had priority of use in the United States. *See Sengoku Works Ltd.*, 96 F.3d at 1219.

5    However, the circumstances surrounding the underlying action convolute such a consideration.

6    Both Hyphy and Defendants argue that they were the first to use the marks in U.S. commerce

7    through the exact same performances and distribution points of digital music. (*Compare* Doc. 20,

8    ¶¶ 34, 37 *with* Doc. 22-1 at 15.) Defendants contend that Mr. Cruz booked performances for their

9    legitimate band prior to the pandemic, (Doc. 22-1 at 15), while Hyphy argues that Mr. Cruz

10   booked performances for their legitimate band before creating a copy-cat band, (Doc. 20, ¶ 25).

11   Defendants also contend that their band used the marks on Spotify and YouTube in 2018, which

12   demonstrates both the fame and use of the marks in U.S. commerce, (Doc. 22-1 at 14), but Hyphy

13   avers that "nothing in Exhibits 3-6 (*i.e.*, the Spotify and YouTube recordings) presented by

14   Defendants demonstrate that the recordings in those exhibits are *Defendants* Grupo Ensamble

15   Band and not the Grupo Ensamble Band owned by Rios and promoted by Hyphy," (Doc. 29 at

16   14). Because all allegations of material fact are taken as true and construed in the light most

17   favorable to the non-moving party, the Court must accept as true Hyphy's allegations that the

18   performances and Spotify and YouTube recordings were all by Hyphy's Band, not the

19   Defendants' Band. *See In re Facebook, Inc.*, 956 F.3d at 601 (holding that when deciding a

20   motion to dismiss, "all allegations of material fact are taken as true and construed in the light

21   most favorable to the non-moving party"). Thus, at the motion to dismiss stage, Hyphy has

22   sufficiently alleged a priority of use and a corresponding protectable ownership interest in the

23   marks. *See Intel Corp.*, 2010 WL 2740063 at *5.

24          Defendants argue that even if the Court determines that Defendants did not have priority

25   of use in the United States, the "judicially noticeable evidence satisfies the secondary meaning

26   test because of the Band's international reach." (Doc. 22-1 at 18.) It is a "well-established

27   principle of trademark law" that "priority of trademark rights in the United States depends solely

28   upon priority of use in the United States, not on priority of use anywhere in the world." *Grupo*

1    *Gigante SA de CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1093 (9th Cir. 2004.)  But this principle is

2    not absolute.  *Id.*  "[W]hen foreign use of a mark achieves a certain level of fame for that mark

3    within the United States, the territoriality principle no longer serves to deny priority to the earlier

4    foreign user."  *Id.*  "To determine whether the famous-mark exception to the territoriality rule

5    applies, the district court must determine whether the mark satisfies the secondary meaning test"

6    and "where the mark has not before been used in the American market . . . that a substantial

7    percentage of consumers in the relevant American market is familiar with the foreign mark."  *Id.*

8    at 1098.  "Secondary meaning refers to a mark's actual ability to trigger in consumers' minds a

9    link between a product or service and the source of that product or service."  *Id.* at 1095.

10        To support the famous marks exception argument, Defendants point to the judicially

11    noticed Spotify album page and YouTube pages for the Band to demonstrate the purported

12    international reach.  (Doc. 22-1 at 18–19.)  Defendants rest their argument on the judicially

13    noticeable nature of these documents to establish that it was their band which earned this

14    recognition, however the Court's judicial notice "extends only to the existence of these

15    documents and not to their substance, which may contain disputed or irrelevant facts."  *Givens*,

16    629 F. Supp. 3d at 1024.  Though the Court recognizes that the more than one hundred thousand

17    streams and more than eight hundred thousand digital subscribers demonstrates a level of success,

18    the factual dispute regarding which band earned those streams and subscribers remains.  Because

19    the Court's only consideration at the motion to dismiss stage is the sufficiency of Hyphy's

20    complaint, the Court need not delve into the substance of Defendants' exhibits, the level of fame

21    of the mark, or who is entitled to claim responsibility for that purported fame.  *See Intel Corp.*,

22    2010 WL 2740063, at *5 (explaining that at the motion to dismiss stage the court is confined to

23    the allegations regarding the use of the marks).  Hyphy has plead a cognizable legal theory, and

24    sufficient facts to support the theory, that Defendants engaged in false designation of origin,

25    trademark infringement, and unfair competition.  Therefore, the Court **DENIES** Defendants'

26    motion to dismiss counts one, two, and five.

27        2.    Counts Three & Six: Lanham Act False Advertising & California False Advertising

28        Hyphy alleges that Mr. Cruz, Mr. Estrada, and Mr. Chagoya's "advertisement by website,

social media and/or print using Plaintiff's proprietary GRUPO ENSAMBLE Marks, and implying legitimacy as the authentic Grupo Ensemble Band is a false statement of fact." (Doc. 20, ¶ 54.) Hyphy avers that the advertising "deception is material because it has and is likely to continue to influence consumers' purchasing decisions and has and is likely to continue to cause diminished support and reduced business opportunities for Hyphy with potential business partners and the consuming public." (*Id.*, ¶ 56.) Defendants contend that Hyphy fails "to plead the 'when, where, and how' of any alleged misconduct on the part of Defendants and do nothing more than to conclusively recite the elements of a false advertising claim" without alleging "the particular circumstances surrounding the conduct." (Doc. 22-1 at 22–23.)

To succeed on a false advertising claim under Lanham Act § 43(a), a plaintiff must show each of the following:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, 758 F.3d 1069, 1071 (9th Cir. 2014). Lanham Act claims based on alleged false advertising must meet the heightened pleading requirements of Rule 9(b). *Factory Direct Wholesale, LLC v. iTouchless Housewares & Products, Inc.*, 411 F. Supp. 3d 905, 923 (N.D. Cal. 2019). False advertising claims under California Business and Professions Code § 17500 are "'substantially congruent' to claims made under the Lanham Act" and thus rise or fall with the Lanham Act false advertising claim. *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (citing *Cleary*, 30 F.3d at 1255). Accordingly, the Court will address the Lanham Act and California false advertising claims jointly.

Defendants argue that Hyphy has not alleged a false statement with the particularity required by Rule 9(b). "To properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about that purportedly fraudulent statement, and why it is false." *Davidson v.*

16

1   *Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Defendants contend that Hyphy makes

2   only four allegations regarding the alleged false advertising conduct: (1) that Defendants "falsely

3   advertised and promoted live shows using the Grupo Ensamble Band's name and likeness" and

4   "have succeeded in securing for Cruz venues for the fake band falsely representing themselves as

5   the Grupo Ensamble Band to Hyphy's detriment"; (2) that Defendants have caused marketplace

6   confusion and deceived consumers "into purchasing tickets to live music shows to see a fake band

7   with much lower quality of musicians and musical performances under the same name and

8   likeness as Plaintiff's legitimate band"; (3) that at least "three venues that had previously booked

9   performances with the legitimate band cancelled the scheduled performances and approximately

10   fifteen venues outrightly rejected booking performances with Hyphy's legitimate Grupo

11   Ensamble band because of the lower-priced performances available from the fake band"; and (4)

12   that Defendants' use of the Grupo Ensamble marks by website, social media, and print are "false

13   statement[s] of fact." (Doc. 22-1 at 22.) Defendants argue that Hyphy did not allege the who,

14   what, when, where, or how of any of these statements, (*Id.* at 23), but Hyphy clearly has.

15       For each of the statements, Hyphy plainly alleges that Mr. Cruz, Mr. Estrada, and Mr.

16   Chagoya made the statements—the "who." (*See* Doc. 20, ¶¶ 54, 72.) Additionally, Hyphy

17   identifies who was misled by the alleged false statements, the "actual and potential consumers of

18   Plaintiff's Grupo Ensamble Band's music and live performances in the United States and

19   beyond." (*Id.*, ¶ 55.) The "when, where and how" are also plainly alleged. Hyphy alleges that

20   Mr. Cruz, Mr. Estrada, and Mr. Chagoya used the Band's name, likeness, and trademarks to both

21   secure venues for the fake band and advertise for those performances. (*Id.*, ¶ 32; Doc. 20-1 at

22   56–77.) Exhibit 3, which Hyphy incorporated by reference into its FAC, demonstrates numerous

23   locations across the United States, dates, and times at which Defendants falsely advertised for the

24   copy-cat band using the Band's name, likeness, and trademarks. *See Khoja v. Orexigen*

25   *Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (explaining how documents attached to the

26   complaint may be incorporated by reference). (Doc. 20-1 at 56–77 (demonstrating events on

27   November 18, 2022 in Sparks, NV, November 20, 2022 in Aurora, CO, November 23, 2022 in

28   Los Angeles, CA, November 23, 2022 in San Bernadino, CA, November 25, 2022 in Las Vegas,

NV, November 26, 2022 in San Francisco, CA, and November 27, 2022 in Fresno, CA)).  Hyphy has sufficiently pled the specificity requirements of Rule 9(b) for the Lanham Act and California false advertising claims.  Therefore, Defendants' motion to dismiss counts three and six is **DENIED**.

3.  <u>Count Four: Violation of the Common Law Right of Publicity</u>

Hyphy alleges that each member of the Grupo Ensamble Band provided Hyphy with "an exclusive license to use the band member's name, likeness, voice, and other identifying information" and that all Defendants had knowledge of these exclusive rights but "for the purpose of competing directly with Plaintiff for live musical performances, misappropriated and used without authorization the identity of the legitimate GRUPO Ensamble Band to lure consumers to Defendants' live performances and for Defendants' commercial advantage."  (Doc. 20, ¶¶ 59–62.)  Defendants contend that because Defendants, not Hyphy, had the rights to the marks, Defendants facially could not violate Hyphy's common law right to publicity.  (Doc. 22 at 24.)

"The right of publicity protects an individual's right to profit from the commercial value of his or her identity."  *Ross v. Roberts*, 222 Cal. App. 4th 677, 684 (2013).  California recognizes both a common law and statutory right of publicity.  *Id.*  To sufficiently plead a violation of the common law right of publicity, the plaintiff must plead that (1) the defendant used the plaintiff's name, likeness, or image; (2) without the plaintiff's authorization; (3) for the defendant's advantage; and (4) the plaintiff was injured as a result.  *Id.* at 684–85.  Defendants argue that because Hyphy did not have ownership of the Band and its related rights, "any claim that Defendants violated [Hyphy's] common law right to publicity is simply incorrect."  (Doc. 22-1 at 24.)  Defendants rely upon the judicially noticed IMPI marks to argue that Defendants had the rights to the marks, which precludes Hyphy from being able to plead that Defendants used the Band's name, likeness, or image.  (*Id.*)  Though the Court recognizes the existence of the IMPI marks, the Court has not judicially noticed the substance, ownership, or priority of those marks.  *See Givens*, 629 F. Supp. 3d at 1024.  Rather, the Court must accept as true Hyphy's allegations that the name, likeness, or image was Hyphy's, not Defendants.  *See In re Facebook, Inc.*, 956 F.3d 589, 601 (9th Cir. 2020).

Defendants contend that these allegations are "incorrect and conclusory" in "assum[ing] that Defendants did not already have the right to use the Grupo Ensamble Band's identity and likeness," not that these allegations fail to sufficiently plead the claim. (Doc. 22-1 at 24.) Nevertheless, Hyphy has satisfied its pleading requirements. (Doc. 22-1 at 24.) Accepting Hyphy's factual allegations as true, Hyphy has sufficiently plead a claim for a violation of the common law right of publicity. Hyphy plead that it has "an exclusive license to use the Band members' name, likeness, voice, and other identifying information" as well as the Band's "name, likeness and other identifying information." (Doc. 20, ¶¶ 59–60.) Furthermore, Hyphy plead that Defendants used this likeness without Hyphy's authorization "for the purpose of competing directly" with Hyphy, which has resulted in both monetary damages and loss of reputation. (*Id.*, ¶¶ 62–64.) Therefore, Defendants' motion to dismiss Hyphy's fourth claim for the common law right of publicity is **DENIED**.

**B.    Counter-Defendants' Motion to Dismiss**

As a threshold matter, Counter-Defendants argue that the Court should dismiss Mr. Tapia's third-party complaint because Tapia is a non-party to the action and has not moved to intervene or otherwise been added as a party. (Doc. 55-1 at 6.) Mr. Tapia contends that he is a necessary party as he retains assignment of Ms. Posadas' ownership rights. (Doc. 59 at 9.) As such, Mr. Tapia requests the Court grant Mr. Tapia leave to file a motion to intervene. (*Id.* at 10.) The Court agrees that Mr. Tapia should be added as a party such that his third-party complaint may be adjudicated, however, no leave to file a motion to intervene is required to do so. Procedurally, Defendants missed a step before Mr. Tapia filed his third-party complaint— Defendants should have joined Mr. Tapia who then could have filed his third-party complaint. However, this deficiency does not militate against the Court considering Mr. Tapia's third-party complaint and Counter-Defendants' corresponding motion to dismiss.

Pursuant to Federal Rule of Civil Procedure 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The Court recognizes that Mr. Tapia alleges an interest in the subject matter of the underlying action and ordering Mr. Tapia joined will prevent prejudice to Defendants while preventing unnecessary multiplicity in further

1    suits. *See Day v. Video Connection of Solon, Ohio*, 602 F. Supp. 100, 102 (N.D. Ohio 1982)

2    (holding that absent joinder of proposed party defendants to suit for service mark, trademark, and

3    trade name infringement and unfair competition, complete relief could not be accorded among

4    those already parties, and in light of the fact that joinder would not deprive the court of

5    jurisdiction, joinder was granted).  Therefore, the Court orders Mr. Tapia joined and will consider

6    Mr. Tapia's third-party complaint and Counter-Defendants' corresponding motion to dismiss.

7         Mr. Tapia alleges nine causes of action against Counter-Defendants: (1) Lanham Act

8    trademark infringement; (2) false designation of origin; (3) Lanham Act false advertising, unfair

9    competition, trade libel, and product disparagement; (4) trademark dilution; (5) false advertising

10   under California Business & Professions Code § 17500; (6) statutory unfair competition under

11   California Business & Professions Code § 17200; (7) trade dilution and injury to business

12   reputation under California Business & Professions Code § 14202; (8) common law trademark

13   infringement; and (9) common law unfair competition.  (Doc. 36.)  Counter-Defendants move to

14   dismiss each claim under Rule 12(b)(6).  As such, each claim will be discussed in turn.

15        1.   Count One: Lanham Act Trademark Infringement – 15 U.S.C. § 1114(1)

16        Mr. Tapia alleges that he possesses the right to two IMPI registered trademarks used for

17   the Band and that Counter-Defendants have intentionally "copied or colorably imitated the Grupo

18   Ensamble Marks and have applied such copies or colorable imitations to products, labels, signs,

19   and prints in connection with their selling, streaming, and performing music, and related

20   promotional materials."  (Doc. 36, ¶ 28.)  Counter-Defendants contend that Mr. Tapia's

21   trademark infringement claim must necessarily fail because Mr. Tapia only asserts ownership of

22   IMPI registered trademarks, not any U.S. trademarks.  (Doc. 55-1 at 9.)  Mr. Tapia's opposition

23   concedes that a trademark infringement claim under the Lanham Act requires United States

24   trademark registration and requests leave to amend to remove the claim.  (Doc. 59 at 12.)  Given

25   Mr. Tapia's concession and desire to remove this claim, the motion to dismiss Count One is

26   **GRANTED** without leave to amend.

27        2.   Counts Two, Six, Eight, & Nine: False Designation of Origin, California Unfair

28             Competition, Common Law Trademark Infringement, & Common Law Unfair

20

1          Competition

2          Mr. Tapia alleges that he has "acquired common law trademark rights in the Grupo

3    Ensamble Marks in connection with, among other things, the production, promotion, sale, and

4    distribution of music composed and performed by the Grupo Ensamble Band." (Doc. 36, ¶ 75.)

5    Mr. Tapia alleges that Counter-Defendants' use of the marks, "along with presentation of the

6    same is likely to cause confusion, cause mistake, or deceive as to their affiliation, connection or

7    association with the Band" and that the use of the marks "in commercial advertising or promotion

8    misinterprets the nature, characteristics, qualities, or origins" of Counter-Defendants "goods

9    and/or services." (Doc. 36, ¶¶ 35–36, 69, 76.) Mr. Tapia alleges that by unlawfully using the

10   Grupo Ensamble marks, Counter-Defendants have engaged in malicious fraudulent and

11   oppressive conduct with an intent to injure Mr. Tapia. (Doc. 36, ¶¶ 84–87.) Counter-Defendants

12   contend that Mr. Tapia does not allege use of the trademarks in the United States such that there

13   would be "any confusion or the likelihood of confusion in the United States" and that Mr. Tapia

14   broadly references Counter-Defendants' advertisements without identifying the particular

15   advertisements and does not allege how "the alleged advertisements misrepresented the qualities

16   or characteristics" of Counter-Defendants' goods and/or services. (Doc. 55-1 at 11.)

17   Furthermore, Counter-Defendants argue that Mr. Tapia makes no allegations of use of the marks

18   in the United States, and further, that the conclusory allegations "do not identify the

19   advertisements to which [Mr. Tapia] refers, when and how the advertisements were published,

20   distributed or disseminated, or even to whom the advertisements were directed or what product or

21   service was advertised." (Doc. 55-1 at 15–16.)

22         To state a claim for false designation of origin, a plaintiff must show: "(1) that it has a

23   protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to

24   cause consumer confusion." *Celebrity Chefs Tour, LLC*, 16 F. Supp. 3d at 1152. For a false

25   designation of origin claim, the mark need not be registered. *Id.* For the first prong, an

26   ownership interest is demonstrated through priority of use. *Sengoku Works, Ltd.*, 96 F.3d at 1219.

27   Use of a mark "typically occurs when a mark is used in conjunction with the actual sale of goods

28   or services" and "creates an association among consumers between the mark and the mark's

owner." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1051. "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Id.* at 1047. State common law claims of unfair competition, actions pursuant to California Business and Professions Code § 17200, and common law trademark infringement claims are subject to the same standard. *Cleary*, 30 F.3d at 1262–63; *Am. Petrofina v. Petrofina of Cal., Inc.*, 596 F.2d 896, 897 (9th Cir. 1979). Accordingly, the Court will address the sufficiency of the false designation of origin, California unfair competition, common law trademark infringement, and common law unfair competition claims together.

For the first prong, Counter-Defendants argue that Mr. Tapia's claims must fail because he "fails to make any allegation of use of Tapia's alleged 'Grupo Ensamble' marks in the United States." (Doc. 55-1 at 11, 14–16.) Counter-Defendants merely challenge Mr. Tapia's use of the marks in the United States, not the potential priority of any alleged use comparative to Counter-Defendants' alleged use. (*See id.*) However, Mr. Tapia made numerous allegations regarding use of the marks in the United States. (*See* Doc. 36, ¶¶ 19–20, 27, 43.) Mr. Tapia alleged that Counter-Defendants "attempted to prevent [Mr. Tapia] from *continuing* to use the Grupo Ensamble Marks in the United States," which axiomatically pleads a use prior to Counter-Defendants' alleged attempts to prevent continued use. (*Id.*, ¶ 19.) Mr. Tapia also alleges that Counter-Defendants took action to remove Mr. Tapia's content from YouTube, Spotify, and other digital distribution platforms which are accessible by United States users. (*Id.*, ¶ 20.) Furthermore, Mr. Tapia indicates that the marks "are in use in a variety of commercial markets in the business of selling, streaming, and performing music, and promotional materials disseminated throughout the *Mexican American* community." (*Id.*, ¶ 27.) Finally, Mr. Tapia alleges that "digital music distribution platforms in the United States and elsewhere" removed Mr. Tapia's Grupo Ensamble content, which included use of the marks, due to Counter-Defendants' misrepresentations. (*Id.*, ¶ 43.) Each of these allegations sufficiently pleads use of the marks in the United States to support the legal theory that Mr. Tapia had a protectible ownership interest in the marks. *See Navarro*, 250 F.3d at 730 ("Dismissal is proper only where there is no cognizable

22

1   legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.").

2         Counter-Defendants argue that Mr. Tapia fails to sufficiently plead which of Counter-

3   Defendants advertisements or promotions misrepresent the qualities or characteristics of Mr.

4   Tapia's goods and/or services to satisfy the second prong.  (Doc. 55-1 at 11, 14–16.)  Counter-

5   Defendants do not argue that Counter-Defendants' alleged use was not likely to cause confusion,

6   but rather that the vague references to advertisements or promotions are too threadbare to support

7   a cognizable legal theory.  (*Id.*)  Despite Counter-Defendants' focus on the alleged advertisements

8   or promotions, Mr. Tapia has sufficiently pled that Counter-Defendants used Mr. Tapia's Grupo

9   Ensamble marks in a manner that would cause confusion.  Mr. Tapia alleged that following her

10  discovery of Mr. Rios' alleged use of the marks, Ms. Posadas served Mr. Rios with notice to

11  suspend and cease use of the marks "across all digital platforms, including for instance, Spotify,

12  Facebook, iTunes, YouTube, etc."  (Doc. 36, ¶ 15; 36-9 at 2–16.)  Furthermore, Mr. Tapia alleged

13  that Counter-Defendants used the marks "in connection with, among other things, a series of

14  musical sound records, and downloadable musical sound records, and digital music downloadable

15  from the Internet and pre-recorded CDs."  (Doc. 36, ¶ 19.)  Similarly, the marks were used on

16  "products, labels, signs, and prints in connection with their selling, streaming, and performing

17  music, and related promotional materials."  (*Id.*, ¶ 27.)  At the motion to dismiss stage, a plaintiff

18  does not need to plead its specific evidence, but rather factual content that allows the court to

19  infer that the defendant is liable for the alleged misconduct.  *Iqbal*, 556 U.S. at 678.  Thus,

20  specific advertisements, promotions, products, labels, sound recordings, etc. need not be

21  referenced at the motion to dismiss stage.  Therefore, Counter-Defendants' motion to dismiss

22  Counts Two, Six, Eight, and Nine is **DENIED**.

23         3.  <u>Counts Three & Five: Lanham Act False Advertising & California False Advertising</u>

24         Mr. Tapia alleges that Counter-Defendants, "[b]y virtue of their advertising in interstate

25  commerce," made false statements regarding the ownership and use of the Grupo Ensamble

26  marks and misrepresented "the nature, characteristics, and qualities of both" Counter-Defendants

27  and Mr. Tapia's products and services.  (Doc. 35, ¶¶ 42–46.)  Mr. Tapia avers that

28  Counter-Defendants intentionally "informed digital distribution platforms, incorrectly, that

1   Third-Party Plaintiff Tapia's Grupo Ensamble Band were impersonating and/or infringing upon

2   [Counter-Defendants'] alleged rights in the musical works and Marks, which did not, and do not

3   exist." (Doc. 36, ¶ 60.) Counter-Defendants contend that Mr. Tapia "fails to state with

4   specificity, the parties to the misrepresentation, and the time, place, and specific content of the

5   false representations." (Doc. 55-1 at 12.) Counter-Defendants argue that Mr. Tapia failed to

6   plead with specificity what advertisements misrepresent the nature, characteristics, and qualities

7   of Mr. Tapia's products and or services and if the advertisements "actually deceived or has the

8   tendency to deceive a substantial segment of its audience." (Doc. 55-1 at 12–13.)

9        To succeed on a false advertising claim under Lanham Act § 43(a), a plaintiff must show

10  each of the following:

11      (1) a false statement of fact by the defendant in a commercial advertisement about
    its own or another's product; (2) the statement actually deceived or has the tendency

12  to deceive a substantial segment of its audience; (3) the deception is material, in that
    it is likely to influence the purchasing decision; (4) the defendant caused its false

13  statement to enter interstate commerce; and (5) the plaintiff has been or is likely to
    be injured as a result of the false statement, either by direct diversion of sales from

14  itself to defendant or by lessening of the goodwill associated with its products.

15  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, 758 F.3d 1069, 1071 (9th Cir. 2014). Lanham Act

16  claims based on alleged false advertising must meet the heightened pleading requirements of Rule

17  9(b). *Factory Direct Wholesale, LLC v. iTouchless Housewares & Products, Inc.*, 411 F. Supp.

18  3d 905, 923 (N.D. Cal. 2019). False advertising claims under California Business and

19  Professions Code § 17500 are "'substantially congruent' to claims made under the Lanham Act"

20  and thus rise or fall with the Lanham Act false advertising claim. *Walker & Zanger, Inc. v.*

21  *Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (citing *Cleary*, 30 F.3d at

22  1255). Accordingly, the Court will address the Lanham Act and California false advertising

23  claims jointly.

24       Counter-Defendants argue that Mr. Tapia fails to meet the heightened pleading standards

25  of Rule 9(b) as required for false advertising claims grounded in fraud. (Doc. 55-1 at 13.) To

26  properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what,

27  when, where, and how of the misconduct charged, as well as what is false or misleading about

28  that purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*,

889 F.3d 956, 964 (9th Cir. 2018).  Counter-Defendants contend that Mr. Tapia did not

sufficiently plead the parties to the misrepresentation and the time, place, and specific content of

those false representations, the who, what, when, and where.  (Doc. 55-1 at 13.)  The "who" is

easily identifiable—Mr. Tapia alleged that Third-Party Defendants Hyphy and Mr. Rios made the

false statements.  (Doc. 36, ¶ 42.)  Similarly, Mr. Tapia sufficiently alleged the "what" and

"where"—that Counter-Defendants falsely represented ownership over the marks and the Band

on digital music platforms, such as Spotify and YouTube, and made false advertisements to that

regard.  (*Id.*, 41–43.)  Finally, Mr. Tapia sufficiently pled the "when" by identifying that in 2017

Mr. Rios began using the marks on digital platforms such as Spotify, Facebook, iTunes, and

YouTube, (*Id.*, ¶ 15), and in 2020 Counter-Defendants used the marks on downloadable digital

music recordings, (*Id.*, ¶ 19).  Though Mr. Tapia does not allege the time of each purported

misrepresentation, Mr. Tapia alleges that beginning in 2017 Counter-Defendants began falsely

representing that they owned the Band and marks by publishing the content under the Band's

name.  (*See generally id.*)  Accordingly, Mr. Tapia has sufficiently pled with particularity the

false advertising claims and Counter-Defendants' motion to dismiss Counts Three and Five is

**DENIED**.

    4.   <u>Counts Four & Seven: Lanham Act Trademark Dilution & California Trademark Dilution</u>

Mr. Tapia alleges that the Grupo Ensamble marks are distinctive and famous, and that

Counter-Defendants' "unauthorized use" of the marks "have cause, and are likely to continue to

cause, dilution of the distinctive quality of the Grupo Ensamble Marks."  (Doc. 36, ¶ 54.)

Counter-Defendants contend that Mr. Tapia's trademark dilution allegations are merely "legal

conclusions containing no factual basis" as Mr. Tapia "fails to allege any use of the 'Grupo

Ensamble' marks in the United States or that the mark became famous prior to

[Counter-Defendants'] allegedly diluting use."  (Doc. 55-1 at 14.)

To state a claim for both federal and California trademark dilution, the trademark owner

must allege "(1) the mark is famous, (2) the defendant is making a commercial use of the mark in

commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's

1    use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify

2    and distinguish goods and services." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,

3    633 F.3d 1158, 1164 n.4 (9th Cir. 2011); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324

4    (9th Cir. 1998) (explaining that the standard is same for both federal and California trademark

5    dilution claims). "Neither federal law nor California state law requires a showing of competition

6    or likelihood of confusion to succeed on a dilution claim." *Jada Toys, Inc. v. Mattel, Inc.*, 518

7    F.3d 628, 634 (9th Cir. 2008). However, for a plaintiff to establish that the mark is being used in

8    commerce, "the mark used by the alleged diluter must be identical, or nearly identical, to the

9    protected mark." *Id.* "Ultimately, courts have concluded that the element of fame is the key

10   ingredient." *Naranjo v. Sandoval*, No. CV 16-8476-PSG, 2018 WL 11350617, *5 (C.D. Cal. Feb.

11   28, 2018).

12          Counter-Defendants argue that the sole allegation of fame—that the marks "are distinctive

13   and famous within the meaning of" the trademark dilution claims—is insufficient to satisfy the

14   first and third elements of a trademark dilution pleading. (Doc. 55-1 at 14.) Mr. Tapia relies

15   upon the "famous mark exception" of the territoriality rule to argue that the marks are sufficiently

16   famous and that Counter-Defendants' use began after the marks became famous. (Doc. 59 at

17   21–22.) However, the famous mark exception is inapposite to trademark dilution claims. The

18   famous mark exception underlies the priority of use analysis, allowing courts to consider

19   extraterritorial fame to establish that "*where the mark has not before been used in the American*

20   *market*," that a "substantial percentage of consumers in the relevant American market is familiar

21   with the foreign mark." *Grupo Gigante*, 391 F.3d at 1098. Conversely, trademark dilution

22   claims necessarily require use of the marks in United States commerce before the defendant's use

23   in commerce for there to be potential dilution of the marks. *Nissan Motor Co. v. Nissan*

24   *Computer Corp.*, 378 F.3d 1002, 1011–12 (9th Cir. 2004) (explaining that the purpose of

25   trademark dilution claims is to protect famous trademark from subsequent uses in U.S. commerce

26   that would "whittle away the value of the trademark"). Therefore, the Court need not consider

27   the famous mark exception, but rather if Mr. Tapia sufficiently alleged that the marks are famous,

28   and that Counter-Defendants began using the marks after the marks became famous.

Counter-Defendants rely on *Naranjo* to argue that Mr. Tapia's pleadings are insufficient to allege fame of the marks such that the marks are a household name in the United States.  (Doc. 61 at 10.)  The Court agrees.  In *Naranjo*, the plaintiff alleged that the band name trademarks were distinctive and famous because the band had "a music catalog spanning 40 years of uninterrupted use and acceptance by his adoring fans and public" and that the "enormous body of work [plaintiff] has released and sold to the public, together with his 40 years of public performances is evidence that his name, the band's name, and the mark are widely recognized throughout the Untied States and Mexico."  2018 WL 11350617, at \*5.  The *Naranjo* court held that "[t]hese allegations create a plausible inference that [the band] has achieved a degree of notoriety amongst fans of regional Mexican music.  However, that is not enough to satisfy the requirements of trademark dilution."  *Id.* at \*6.  The court noted that the allegations of the adoring fan base and extensive body of work "suggest fame within a subset of the population" but that trademark dilution claims, "deny protection to marks that are famous only in 'niche' markets." *Id.*

Mr. Tapia alleges that the marks are famous but fails to identify how or to what extent. (*See generally* Doc. 36.)  Mr. Tapia's opposition references his Request for Judicial Notice in relation to Hyphy's motion to dismiss to argue that with "such a high number of streams and subscribers" on digital platforms, "the Court can infer that Mexican American consumers in the United States are familiar with Tapia's use of the Grupo Ensamble Marks."  (Doc. 59 at 23.) Even in considering the streams and subscribers, Mr. Tapia fails to allege that the Grupo Ensamble marks have reached the level of fame "that even non-competing uses can impinge on their value."  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999).  Therefore, Counter-Defendants' motion to dismiss Counts Four and Seven is **GRANTED** with leave to amend.

## C.    Preliminary Injunction

Hyphy has moved for preliminary injunction, asking the Court to protect Hyphy "from Defendants' calculated efforts to (1) prevent Hyphy and the musical band by the name "Grupo Ensamble" from realizing profits on its musical recordings and live performances and (2) destroy

1    Hyphy and the Band's reputation and the goodwill Hyphy has built in its trademarks."  (Doc. 21

2    at 7.)  In deciding a motion for preliminary injunction, the Court is not required to decide doubtful

3    and difficult questions or law or disputed questions of fact.  *See, e.g.*, *Int'l Molders' & Allied*

4    *Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (establishing the

5    district court's discretion for granting preliminary injunctions even in light of disputed facts);

6    *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-cv-4050-MEJ, 2014 WL

7    6788310, at *8 (N.D. Cal. Dec. 2, 2014) ("Perhaps UTS will ultimately be able to demonstrate

8    that it is the rightful owner of the registered PepperBall mark, but . . . at this point there are too

9    many unresolved issues and factual disputes for the Court to find that UTS has demonstrated a

10   likelihood of success that it is the 'registrant' within the meaning of the Lanham Act.").

11           In fact, courts routinely deny a request for injunctive relief in similar circumstances where

12   the parties fundamentally disagree on the facts underlying the case.  *See, e.g.*, *JDA Software, Inc.*

13   *v. Bissett*, 282 Fed. App'x 532, 535 (9th Cir. 2008) ("In light of conflicting evidence . . ., the

14   District Court did not clearly err in determining that JDA had not produced sufficient evidence to

15   prevail on its factual claims for purposes of a preliminary injunction."); *Marina Vape, LLC v.*

16   *Nashick*, No. 16-cv-1028-JAK, 2016 WL 9086939, at *11–12 (C.D. Cal. May 6, 2016) (denying

17   motion for preliminary injunction where "competing evidence" was presented by the parties);

18   *Waste and Compliance Mgmt., Inc. v. Stericycle, Inc.*, No. 17-cv-967-DSM, 2017 WL 4358145,

19   at *6 (S.D. Cal. Oct. 2, 2017) (denying motion for preliminary injunction, "declin[ing] to resolve

20   these factual disputes on such a limited record," and "find[ing] Plaintiff has not demonstrated a

21   likelihood of success on the merits").

22           As demonstrated through the factual allegations underlying both motions to dismiss, the

23   parties dispute ownership of the Band and the corresponding marks.  (*Compare* Doc. 22 *with*

24   Doc. 55.)  The competing evidence presented by the parties reflects their fundamental

25   disagreement on the facts that underlie their respective claims to the ownership of the Grupo

26   Ensamble marks.  Because the Court is not bound to decide disputed questions of fact in deciding

27   a motion for preliminary injunction, *see Nelson*, 799 F.2d at 551, the Court refuses to do so.

28   Though Hyphy may be able to ultimately demonstrate ownership of the Band and the marks, the

1  unresolved issues and factual disputes are too expansive for the Court to find that Hyphy has

2  demonstrated a likelihood of success on the merits of the claim.  Accordingly, Hyphy's motion

3  for preliminary injunction is **DENIED**.

**CONCLUSION**

4

5  For the reasons set forth above:

6  1. Hyphy's motion for preliminary injunction is **DENIED.**

7  2. Defendants' request for judicial notice is **GRANTED IN PART** and **DENIED IN**

8     **PART**.

9  3. Defendants' motion to dismiss Hyphy's first amended complaint is **DENIED**.

10 4. Counter-Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN**

11    **PART** as follows:

12    a. Counter-Defendants' motion to dismiss Mr. Tapia's first cause of action is

13       **GRANTED** without leave to amend.

14    b. Counter-Defendants' motion to dismiss Mr. Tapia's second, third, fifth, sixth,

15       eighth, and ninth cause of action is **DENIED**.

16    c. Counter-Defendants' motion to dismiss Mr. Tapia's fourth and seventh cause

17       of action is **GRANTED** with leave to amend.[2]

18

19 IT IS SO ORDERED.

20    Dated:   **June 3, 2025**

UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

---

[2] It appears that amendment may be futile based upon the high pleading standard but, in an abundance of caution, the Court will permit leave to amend. Mr. Tapia is strongly cautioned to review the requirements of Rule 11 before proceeding further on these claims.